F. L. Kraemer & Company v. United States

No. 8079.— 

Entry No. 707795.

(Decided January 30, 1952)

*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

MOLLISON, Judge: This is an appeal for reappraisement of certain onyx slabs and articles made of onyx exported from Mexico on July 28, 1947. The merchandise was entered at the invoiced values, which are claimed to be the export values of the merchandise within the definition thereof contained in section 402 (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (d)).

It is agreed by counsel that no foreign value as defined in section 402 (c) of the Tariff Act of 1930, as amended, existed for the merchandise at bar. Part of the merchandise, consisting of 5-inch and 8-inch round slabs and 6-inch square slabs, was appraised on the basis of United States value, which is defined in section 402 (e) of the Tariff Act of 1930, as amended, and the remainder, consisting of 3½-inch and 8-inch square slabs, 6-inch round slabs, and ashtrays and certain articles described on the invoice as "figures," identified by the witnesses as book ends and candlesticks, was appraised on the basis of cost of production, which is defined in section 402 (f) of the said act. For ready reference, the provisions of sections 402 (d), (e), as amended, and (f) are set forth in the margin.[1]

The plaintiff contends (1) that the appraisement made herein was invalid by reason of failure of compliance on the part of the collector and appraiser with the mandatory provisions of section 499 of the Tariff Act of 1930, as amended; (2) that the invoiced and entered values represent the export values of the merchandise; and (3) that

---

[1] (d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price' at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

if there is no export value for the merchandise, then the values returned by the appraiser on that portion of the merchandise which was appraised on the basis of United States value were erroneous.

The record evidence consists of the record made in the case of *F. L. Kraemer & Company* v. *United States*, reappraisement 184216–A (decided concurrently herewith), 28 Cust. Ct. 593, Reap. Dec. 8078, as well as certain additional testimonial evidence and proceedings had herein, and certain real and documentary evidence in the form of exhibits.

The basis for the contention that the appraisement herein was invalid is the fact that an examination of the summary sheet attached to the entry shows that the collector designated, and the appraiser examined, only 2 out of the 37 packages in which the merchandise was imported. Section 499 of the Tariff Act of 1930, as amended, *supra*, requires the designation and examination of "not less than one package of every ten packages of merchandise" unless by special regulation or instruction of the Secretary of the Treasury a less number of packages is permitted to be designated and examined.

Counsel for the defendant has pointed to no such special regulation or instruction, so that it would appear that there was insufficient designation and examination of packages. However, the last paragraph of section 499, as amended, *supra*, bars a holding that an appraisement is invalid by reason of insufficient designation or examination—

* * * unless the party claiming such invalidity shall establish that merchandise in the packages or quantities not designated for examination, or not actually examined, was different from that actually examined and that the difference was such as to establish the incorrectness of the appraiser's return of value; and then only as to the merchandise for which the value returned by the appraiser is shown to be incorrect.

In this regard, the plaintiff makes the same contention as it did in the incorporated case, i. e., that the shipment as actually received contained three grades of onyx and that different values for the three grades were not returned by the appraiser. Therefore, it is claimed, "The differences in the values of the different grades of onyx slabs is 'such as to establish the incorrectness of the appraiser's return of value.'"

The evidentiary situation with respect to this point is the same in the case at bar as in the incorporated case. For the reasons stated in the decision therein, which are incorporated herein by reference, I find and hold that the plaintiff has failed to sustain the statutory burden of proof necessary before the appraisement herein may be declared to be invalid.

The record with respect to the contention on the merits, i. e., that the invoiced and entered values represent the export values of the merchandise, is the same herein as was made in the incorporated

case, with the additional fact brought out during the trial of the instant case that Mr. Fine, the owner of the company which was the ultimate consignee of the merchandise, visited a manufacturer of onyx in Mexico named Onyx Eymarmoles at or about the time that he visited a manufacturer named Onyx Marmolito, and was offered by the former, merchandise such as or similar to that here in issue at the same prices at which the merchandise at bar was invoiced and entered.

This evidence has the same defect as the evidence offered in the incorporated case with respect to the offers from Onyx Marmolito. It appears that those offers were made in December 1946 or January 1947, and there is nothing to show that the same prices obtained at the time of exportation of the merchandise herein, July 28, 1947.

For the reasons stated in the decision in the incorporated case, I find that the plaintiff has failed to offer such proof in support of values for the merchandise other than those found by the appraiser as would establish a *prima facie* case, which would overcome the presumption of correctness attaching to the appraised values.

From the tenor of the evidence offered on behalf of the plaintiff on the trial of the issue with respect to the correctness or incorrectness of the values returned by the appraiser on the merchandise appraised on the basis of United States value, it appeared that it was the plaintiff's contention that the appraiser had made improper allowances in the calculation of such value for "cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, * * * profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods," which are elements specified in the statute, section 402 (e), *supra.*

From a reading of the brief filed on behalf of the plaintiff, however, it appears that the plaintiff's actual contention is that there were no sales of such or similar imported merchandise in the United States at or prior to the date of exportation, and that such sales as had been made of the merchandise previously imported by the importer and covered by reappraisement 184216–A had not been made in wholesale quantities.

There is nothing in the record to establish that the appraiser based his appraisement at United States value upon the prices at which the merchandise previously imported by the importer herein was offered for sale in the United States, but even if this were so, it appears from the record in the incorporated case that although there were only sales of samples prior to the date of importation of the merchandise at bar, it nevertheless was offered for sale prior to that time.

Upon the entire record before me I find as facts:

(1) That the merchandise involved consists of certain round and square onyx slabs and certain articles made of onyx exported from Mexico on July 28, 1947.

(2) That at the time of exportation of the instant merchandise, such or similar merchandise was not freely offered for sale either for home consumption or for exportation to the United States to all purchasers in the principal markets of Mexico, in the usual wholesale quantities and in the ordinary course of trade.

(3) That as to the 3½-inch and 8-inch square slabs, the 6-inch round slabs, the ashtrays, and the articles described on the invoice as "figures," such or similar merchandise was not freely offered for sale for domestic consumption, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade.

(4) That as to the 5-inch and 8-inch round slabs and the 6-inch square slabs, the price at which such or similar merchandise was freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any was paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods, was the appraised value as to each item.

(5) That as to the remainder of the merchandise the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind—

·is the appraised value as to each item involved.

I conclude as matters of law:

(1) That as to the 5-inch and 8-inch round slabs and the 6-inch square slabs, United States value, as defined in section 402 (e) of the Tariff Act of 1930, as amended, is the proper basis of value;

(2) That as to the remainder of the items involved, cost of production, as defined in section 402 (f) of the Tariff Act of 1930, is the proper basis of value, and

(3) .That such value in each case is the appraised value as to each item.

Judgment will issue accordingly.